IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:25-cv-966-WO-JEP

ZACHARY PIPER LLC, ZACHARY
PIPER SOLUTIONS, LLC, and
PIPER COMPANIES, LLC,

    **Plaintiffs,**

v.

KOLLIN KORELL, INNOVIEN
SOLUTIONS L.L.C., and
CAMRYN MASTEL

    **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT CAMRYN MASTEL

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant Camryn Mastel ("Mastel" or "Defendant"), by and through her undersigned counsel, hereby respectfully submits this Memorandum of Law in Support of her Motion to Dismiss the Verified Amended Complaint ("Complaint") filed by Plaintiffs Zachary Piper, LLC, Zachary Piper Solutions, LLC, and Piper Companies, LLC (collectively "Plaintiffs").

### I.    INTRODUCTION

In an attempt to needlessly expand the scope of this litigation, Plaintiffs, without a shred of specific factual support, have asserted frivolous claims against Mastel, the sole member and Chief Executive Officer of Defendant Innovien Solutions, LLC ("Innovien"), based on a threadbare piercing the corporate veil theory. None of Plaintiffs' allegations

1

establish that this Court has personal jurisdiction over Mastel, much less that she should be liable for any alleged conduct by Innovien or Defendant Kollin Korell ("Korell"). There are simply no facts that could plausibly support Plaintiffs' causes of action for piercing the corporate veil, misappropriation of trade secrets, violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") or civil conspiracy against Mastel. All of Plaintiffs' claims against Mastel should be dismissed as a matter of law.

First, Plaintiffs have wholly failed to establish that this Court has personal jurisdiction over Mastel—a resident of the State of Georgia. The Complaint should be dismissed against her based on the lack of jurisdiction alone. However, even if Plaintiffs could establish personal jurisdiction against Mastel, they have still wholly failed to properly allege any substantive cause of action against her. Plaintiffs seek to hold Mastel individually liable for the actions of Innovien under a piercing the corporate veil theory. However, they do not assert any factual allegations to support this theory other than their speculation that Mastel is Innovien's alter ego, which is a farce. Further, even if they could establish that veil piercing is appropriate here, which they cannot, they have not adequately pled any cause of action against Mastel (or Innovien). The claims for misappropriation of trade secrets, violation of UDTPA, and civil conspiracy against Mastel fail for the same reasons they fail against Innovien and Korell, as set forth in their Partial Motion to Dismiss. [Dkt. 25, 26]. Indeed, Plaintiffs have not adequately alleged misappropriation of a trade secret by either Innovien or Mastel, and they have not alleged the necessary conduct to support UDTPA or civil conspiracy claims. Because these purported causes of action fail

to state a claim under applicable law, this Motion should be granted, and the claims against Mastel should be dismissed.

## II. RELEVANT ALLEGATIONS

To avoid unnecessary repetition of facts, Mastel incorporates the summary of relevant allegations set forth in Section II of Korell and Innovien's Memorandum in Support of their Partial Motion to Dismiss. (*See* Memo in Support of Partial MTD at 3-6 [Dkt. 26].) Of specific relevance to Plaintiffs' attempted claims against Mastel, Plaintiffs assert that Defendant Innovien "is a staffing and human capital solutions firm that specializes in identifying, recruiting, and developing highly skilled professionals to meet customer needs." (Verified Amended Compl. [hereinafter "Compl."] at ¶ 64 [Dkt. 13].) Innovien is "headquartered in Atlanta, Georgia." (*Id.* at ¶ 102.) "Mastel is the founder, majority owner[,] controlling shareholder, and chief executive of Innovien." (*Id.* at ¶ 106.) She is also the registered agent of the company. (*Id.* at ¶ 105.) Although Plaintiffs notably fail to make any allegations about Mastel's state of residence (*see generally* Compl.), she is a resident of the State of Georgia and has lived in Georgia since October 2018 (Declaration of Camryn Mastel [hereinafter "Mastel Decl."] at ¶ 3 [Dkt. 34-3]).

While Innovien conducts business in North Carolina, Plaintiffs allege that Innovien, at the direction of Mastel, has been administratively dissolved in North Carolina since August 2017. (Compl. at ¶¶ 3, 102-03.) Further, upon Plaintiffs' information and belief, "Mastel dominates and controls all aspects of Innovien's operations." (*Id.* at ¶ 107.) Additionally (and also upon information and belief), "Mastel personally directed, approved,

3

and participated in the decisions to employ Korell despite knowledge of his contractual obligations and to utilize confidential information belonging to [Plaintiffs] to unfairly compete" with them. (*Id.* at ¶ 109.) Plaintiffs allege that Mastel was also directly involved in recruiting and hiring Korell to his position at Innovien. (*Id.* at ¶ 78.) Finally, Plaintiffs claim that Mastel used Innovien "to induce and participate in Korell's wrongful conduct, including [his] breach of restrictive covenants, misappropriation of trade secrets, and solicitation of [Plaintiffs'] customers." (*Id.* at ¶ 174.)

### III. STATEMENT OF THE QUESTIONS PRESENTED

1. Whether this Court has personal jurisdiction over Mastel.

2. Whether Plaintiffs have stated a claim for piercing the corporate veil against Mastel, and whether such claim exists as an independent cause of action.

3. Whether Plaintiffs can hold Mastel liable for Innovien's conduct under a piercing the corporate veil theory of liability.

4. Whether Plaintiffs have stated a claim against Mastel for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA").

5. Whether Plaintiffs have stated a claim against Mastel for a violation of the UDTPA.

6. Whether Plaintiffs have stated a claim for civil conspiracy against Mastel.

## IV. ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiffs Have Not Established that this Court has Personal Jurisdiction Over Mastel.

Pursuant to Fed. R. Civ. P. 12(b)(2), once a defendant has affirmatively raised a challenge to personal jurisdiction, "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage." *Bryant v. Core Contents Restoration, LLC*, Case No. 7:20-cv-00040-M, 2021 U.S. Dist. LEXIS 62891, at *18 (E.D.N.C. Mar. 30, 2021) (*citing Grayson v. Anderson*, 816 F.3d 262, 267-68 (4th Cir. 2016)). To make the required showing of personal jurisdiction, Plaintiffs must show that (1) the exercise of jurisdiction is "authorized by the long-arm statute of the forum state" and (2) the exercise of jurisdiction "comport[s] with Fourteenth Amendment due process requirements." *Id.* at *19.

North Carolina's long-arm statute extends jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment." *ABC Phones of N.C., Inc. v. Yahyavi*, 2020 U.S. Dist. LEXIS 128867, at *8 (E.D.N.C. July 22, 2020). Therefore, this Court "may exercise specific jurisdiction [only] if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Id.* at *8-9. In analyzing the issue of specific jurisdiction, "courts consider: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.'" *Id.* at *9. "[W]here a business organization is subject to personal jurisdiction in a forum, mere membership in or employment by the organization is insufficient to confer

5

personal jurisdiction over an individual…." *Bryant*, 2021 U.S. Dist. LEXIS 62891, at *21. Additionally, "personal jurisdiction over a limited liability company does not automatically extend to its members…[t]o hale a member of an LLC into…court, the member sought to [be] held answerable must have had minimum contacts with the forum state independent of those of the LLC." *V-E2, LLC v. Callbutton, LLC*, No. 3:10cv538, 2012 U.S. Dist. LEXIS 174633, at *8-9 (W.D.N.C. Dec. 8, 2012) (internal citations omitted).

Here, Plaintiffs have not made any allegations related to Mastel's residence; her contacts, as an individual, with the State of North Carolina; or any other facts that could plausibly support their claims that she is subject to personal jurisdiction before this Court. As an initial matter, Mastel is a resident of the State of Georgia and has been a resident of Georgia since October 2018. (Mastel Decl. at ¶ 3.) Plaintiffs served Mastel with the Complaint at her home in Atlanta. (*See* Mastel Proof of Service [Dkt. 35].) While Plaintiffs do not make any specific allegations related to jurisdiction over Mastel (*see generally* Compl.), they appear to be relying upon (1) the fact that she is the owner of Innovien and, at her alleged direction, Innovien has been administratively dissolved in North Carolina despite doing business there; (2) that she was involved in Innovien's recruitment of Korell; and (3) that she, without any additional specificity, allegedly induced Korell and Innovien's alleged wrongful conduct. (Compl. at ¶¶ 78, 105-09). These allegations are entirely insufficient to establish that Mastel "purposefully availed herself" of conducting business in North Carolina (in her individual capacity) such that she is subject to jurisdiction here. In fact, outside of her capacity as member and Chief Executive Officer of Innovien, there

6

are no allegations in the Complaint that Mastel took any actions with respect to Plaintiffs or that she purposefully directed any conduct toward them in North Carolina. (*See generally* Compl.) Further, the only specific action that Plaintiffs allege Mastel took, even in her role as Chief Executive Officer of Innovien, is that she was involved in the recruitment and hiring of Korell. (*See id.* at ¶ 78.) Plaintiffs are essentially attempting to assert personal jurisdiction over a Georgia resident with no ties to the State of North Carolina solely because she is the sole member and Chief Executive Officer of an entity subject to the Court's jurisdiction. This is wholly insufficient to meet their burden, as Plaintiffs must establish that Mastel had "minimum contacts with the forum state independent of those of" Innovien. *V-E2, LLC,* 2012 U.S. Dist. LEXIS 174633, at *8-9. Because they have not done this, their claims against Mastel should be dismissed for a lack of personal jurisdiction.

B. **Even if Plaintiffs Could Establish Personal Jurisdiction Over Mastel, the Complaint Should Still be Dismissed Because the Substantive Claims Against Her Fail as a Matter of Law.**

In the Complaint, Plaintiffs assert four causes of action against Mastel—a claim for piercing the corporate veil, a claim for trade secret misappropriation under the DTSA, a claim for violations of UDTPA, and a claim for civil conspiracy. However, even if this court did have personal jurisdiction over Mastel, none of these claims could proceed because Plaintiffs have not alleged adequate facts to support them. Plaintiffs cannot state a cause of action against Mastel for piercing the corporate veil and cannot use that theory to hold Mastel liable for Innovien's alleged trade secret misappropriation, tortious

7

interference, violations of UDTPA, or civil conspiracy. Additionally, to the extent Plaintiffs are attempting to hold Mastel liable for her own individual alleged conduct (as opposed to Innovien's alleged conduct through a piercing the corporate veil theory), those claims also fail as Plaintiffs have asserted no relevant factual allegations against Mastel individually.

      1.    <u>Plaintiffs' Claims Related to a Piercing the Corporate Veil Theory of Liability Fail as a Matter of Law.</u>

Plaintiffs' attempts to assert liability against Mastel based on a piercing the corporate veil theory of liability in the Complaint are twofold. First, Plaintiffs attempt to assert an independent cause of action against Mastel for piercing the corporate veil. (Compl. at ¶¶ 169-80.) Plaintiffs also seek to hold Mastel liable for the conduct of Innovien based on a piercing the corporate veil theory. (*See id.* at ¶ 179 (asserting that "the Court should disregard the limited liability company entity status of Innovien and hold Ms. Mastel personally liable for the judgment against Innovien").) Neither theory is viable.

It is black-letter law that "a person who is an interest owner, manager, or other company official is not liable for the obligations of the LLC solely by reason of being an interest owner, manager, or other company official." *Estevez v. C&S Com., LLC*, No. 25CV001966-890, 2025 NCBC LEXIS 166, at *8-9 (N.C. Super. Ct. Nov. 25, 2025). Under certain circumstances, a court may disregard the LLC's corporate status and hold a member of an LLC "individually liable for the company's obligations through the doctrine of piercing the corporate veil." *Id.* at *9. However, "like lightning, the remedy of piercing is rare and severe" and "should be invoked only in an extreme case where necessary to

serve the ends of justice." *Id.*; *see also Green v. Freeman*, 367 N.C. 136, 145 (2013) ("Disregarding the corporate form is not to be done lightly."). Plaintiffs have not come close to alleging that these rare circumstances are present here.

As an initial matter, "piercing the corporate veil is an ancillary equitable remedy and not an independent cause of action." *W&W Partners, Inc. v. Ferrell Land Co., LLC*, No. 17-CVS-9998, 2018 NCBC LEXIS 52, at *22 (N.C. Super. Ct. May 22, 2018); *see also Krawiec v. Manly*, 370 N.C. 602, 616 (2018) (holding that "the doctrine of piercing the corporate veil is not a theory of liability"). Because it is not an independent cause of action, Plaintiffs' Count VI against Mastel for piercing the corporate veil should be dismissed on this basis alone.

Further, to the extent that Plaintiffs are attempting to pierce the corporate veil to hold Mastel liable for the conduct of Innovien (as opposed to attempting to assert an independent cause of action against her), that effort also fails as a matter of law for two reasons. First, Plaintiffs have not adequately alleged any facts that would justify piercing the corporate veil in this case. Second, all of the underlying causes of action against Innovien fail as a matter of law and therefore, there can be no derivative liability against Mastel. In deciding whether to pierce the corporate veil, North Carolina has adopted the "instrumentality rule." *Insight Health Corp. v. Marquis Diagnostic Imagine of N.C., LLC*, No. 14 CVS 1783, 2018 NCBC LEXIS 56, at *23 (N.C. Super. Ct. June 5, 2018). First, Plaintiffs must allege that "the corporation is so operated that it is mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of

the declared public policy or statute." *Green*, 367 N.C. at 145. Factors such as "inadequate capitalization, noncompliance with corporate formalities, lack of separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and an absence of corporate records" are considered in determining whether a corporation is merely an alter ego of its owner. *Id.* If Plaintiffs could make a threshold showing that the veil should be pierced, which they cannot, they must also plead three additional elements to show that Mastel should be held personally liable for Innovien's obligations: (1) that Mastel had "control, not mere majority or complete stock control, but complete dominion" over Innovien such that "it had no separate mind, will, or existence of its own"; (2) that Mastel's control was used by her to "commit fraud or wrong, to perpetrate the violation of a statutory or other…legal duty;" and (3) the control and breach of duty "proximately cause[d] the injury" complained of. *Insight Health*, 2018 NCBC LEXIS 56, at *23-24.

Plaintiffs have not adequately alleged any of these factors and certainly have not sufficiently alleged any complete domination by Mastel over Innovien. In support of their request to pierce the corporate veil, Plaintiffs assert only one of the above-referenced factors—that Mastel has disregarded corporate formalities because she caused Innovien to be administratively dissolved in North Carolina even though it still conducts business there. (Compl. at ¶ 104.) That allegation has no consequence. Plaintiffs do not make any allegation that Mastel has commingled funds, has siphoned off funds for her own use, that Innovien does not have functioning officers or directors, that the company is inadequately

capitalized, or that it has failed to follow any other corporate formalities. (*See generally* Compl.) In fact, to show Mastel's alleged "control," Plaintiffs only make generic, unsupported allegations that, upon information and belief, Mastel disregarded corporate formalities and that she "dominates and controls all aspects of Innovien's operations." (*Id.* at ¶¶ 107-08.) Apart from the fact that Mastel is the Chief Executive Officer and sole member of Innovien, an entirely unremarkable scenario, Plaintiffs have not included a single specific factual allegation that could conceivably support holding Mastel liable under this extraordinary theory. Lightning has not struck in this case.

And even if Plaintiffs could adequately allege sufficient facts to show Mastel's domination and control over Innovien, their attempts to hold her liable for its alleged conduct would still fail because "there must also be an underlying legal claim to which liability may attach." *See Green*, 367 N.C. at 146 (holding that because all of the underlying claims against the corporation had either been dismissed by the court or erroneously submitted to the jury, there was no underlying claim for which the owner could be held liable); *see also Krawiec*, 370 N.C. at 616 (holding that piercing the corporate veil was "inapposite when…all underlying claims" against the corporate defendants "have been or should be dismissed.") As set forth in significant detail in Innovien and Korell's Memorandum of Law in Support of their Partial Motion to Dismiss, all of Plaintiff's underlying claims against Innovien should be dismissed for failure to state a claim upon which relief may be granted. (*See generally* Memo in Support of Partial MTD.) Specifically, Plaintiffs have not adequately alleged that Innovien has misappropriated any of their trade

11

secrets (*id.* at 11-15); that it tortiously interfered with any of Korell's valid contractual obligations (*id.* at 18-20); that it committed an unfair trade practice in violation of UDTPA (*id.* at 21); or that it engaged in a civil conspiracy against Plaintiffs (*id.* at 22). Because all of the underlying claims against Innovien should be dismissed, there is no viable claim for which Mastel could be held liable, even if Plaintiffs could show that the corporate veil should be pierced. Therefore, to the extent Plaintiffs seek to hold Mastel liable under a piercing the corporate veil theory, either as an independent cause of action or as a mechanism for derivative liability for Innovien's conduct, those claims should be dismissed as a matter of law.

    2.    <u>Counts IV Fails as a Matter of Law Because Plaintiffs Have Not Adequately Alleged Trade Secret Misappropriation Under Federal Law.</u>

It is unclear whether Plaintiffs intend hold Mastel liable for Innovien's alleged misappropriation of trade secrets solely under a piercing the corporate veil theory or whether they have separately asserted a cause of action for trade secret misappropriation against Mastel based on her own conduct. As explained above in Section IV.B.1 *supra*, to the extent this claim is asserted against Mastel solely based on Plaintiffs' piercing the corporate veil theory, that claim fails as a matter of law. However, to the extent Plaintiffs are attempting to assert a claim based on Mastel's own alleged misappropriation of Plaintiffs' trade secrets, that claim fails as well. Under both the DTSA and state law, a plaintiff must plausibly allege that "the plaintiff 'possessed a valid trade secret' and that the trade secret was misappropriated." *Sysco Mach Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025). However, "trade secret is information that is subject to

12

'reasonable measures to keep such information secret' and which 'derives independent economic value' from its secrecy." *Id.* (citing the applicable federal and North Carolina statutes). In order to allege the existence of a trade secret at the pleading stage, the plaintiff must "identify 'with sufficient particularity' the trade secret it claims has been misappropriated." *Id.* After pleading the existence of a trade secret, the plaintiff must show that it has been misappropriated. *Id.* at 229. "Misappropriation involves acquisition, disclosures, or use of a trade secret by improper means or without consent." *Id.* The plaintiff "cannot plausibly allege misappropriation by mere speculation and pleading 'upon information and belief,' and generically reciting the claim's elements." *MichJeff, LLC v. FCX Glob., Inc.*, No. 7:24-CV-449-D, 2025 U.S. Dist. LEXIS 32630, at *31 (E.D.N.C. Feb. 24, 2025).

As set forth in Korell and Innovien's Memo in Support of Their Partial MTD, Plaintiffs have failed to sufficiently identify any protectable trade secret such that they can state a claim for trade secret misappropriation against any of the Defendants. (*See* Memo in Support of Partial MTD at 11-18.) Making matters worse, even assuming for the sake of argument that Plaintiffs have alleged the existence of a trade secret, they fail to adequately allege any misappropriation by Mastel. In fact, in the Complaint, Plaintiffs do not allege any specific act that Mastel took with regard to their trade secrets or that she even had access to any of their trade secret information. (*See generally* Compl.) The only specific conduct that Plaintiffs attribute to Mastel is that (1) she was involved in hiring and recruiting Korell; (2) that she caused Innovien to be administratively dissolved in North

13

Carolina; and (3) she somehow (without any factual specificity) directed Korell to use Plaintiffs' confidential or trade secret information on behalf of Innovien. (Compl. at ¶¶ 78, 105-09.) These allegations are not sufficient to constitute misappropriation. Like their claim against Korell and Innovien, Plaintiffs' entire claim against Mastel rests on nothing more than its rank speculation that, because Mastel is the owner and Chief Executive Officer of Innovien and she was involved in hiring Korell, she must also be instructing him to use unspecified trade secret information from his employment with Plaintiffs on behalf of Innovien. This is not sufficient to state a claim for trade secret misappropriation and Count IV must be dismissed against Mastel. *See AWP, Inc. v. Henry*, No. 1:20-cv-01625-SDG, 2020 U.S. Dist. LEXIS 222087, at *10 (N.D. Ga. Oct. 28, 2020) (holding that "mere possession" of a trade secret when going to work for a competitor business "is not enough to state a claim of threatened misappropriation").

    3.    <u>Plaintiffs Fail to State a Claim for Violations of the North Carolina Uniform and Deceptive Trade Practice Act.</u>

A claim for violation of UDTPA requires a plaintiff to allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the plaintiff." *KNC Techs., LLC v. Tutton,* No. 19CVS793, 2021 NCBC LEXIS 38, at *53-54 (N.C. Super. Ct. Apr.8, 2021). "[A] mere breach of contract, albeit willful or intentional, cannot serve as the sole basis for a UDTPA claim." *Id.* at *54. To form the basis of an UDTPA claim, a "breach of contract must be accompanied by aggravating circumstances…to elevate it to an unfair or deceptive trade practice." *Id.*

Plaintiffs' claim for UDTPA violations are based on the same conduct as the other claims in the Complaint—namely, that Mastel somehow directed or induced Korell to breach his non-compete and non-solicit, breach his confidentiality obligations to Plaintiffs, and misappropriate Plaintiffs' trade secrets. (Compl. at ¶¶ 108, 182-83.) But for the reasons stated in Sections IV.B.1 and 2, *supra,* and in Korell and Innovien's Memo in Support of their Partial Motion to Dismiss, Plaintiffs have not properly alleged any of the above-referenced claims against Mastel or Innovien. (*See* Memo in Support of Partial MTD at 21.) Moreover, the mere fact that Mastel was involved in hiring Korell is not sufficient to constitute an unfair or deceptive trade practice such that she could be liable for a violation of UDTPA. There are simply no allegations against her that could conceivably form the basis of a UDTPA claim against her (either in her individual capacity or as an officer of Innovien). Count VII fails to state a claim and should be dismissed against Mastel.

4. <u>Plaintiffs Fail to State a Claim for Civil Conspiracy.</u>

To state a claim for civil conspiracy, the complaint "must allege (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *BDM Investments v. Lenhil, Inc.*, 264 N.C. App. 282, 300 (2019). "Civil conspiracy is a dependent claim." *Id.* Therefore, a plaintiff can only maintain a civil conspiracy claim "where there is an underlying claim for unlawful conduct." *Id.*

As stated above, all of Plaintiffs' claims against Mastel fail to state a claim and should be dismissed as a matter of law. Plaintiffs have not adequately alleged any liability

under a piercing the corporate veil theory, any violation of UDTPA, or any misappropriation of trade secrets. Because the underlying claims fail and Plaintiffs have not adequately alleged any wrongful act by Mastel in furtherance of the alleged conspiracy, Count IX fails and should be dismissed.

## V. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant this Motion to Dismiss and dismiss all claims against Mastel with prejudice.

Respectfully submitted this 29th day of December, 2025.

OF COUNSEL:

Megan P. Mitchell
Georgia Bar No. 916934
Lindsey E. Locke
Georgia Bar No. 371291
ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363
404.873.8164
megan.mitchell@agg.com
lindsey.locke@agg.com

/s/ Aislinn R. Klos
Aislinn R. Klos
NC State Bar No. 54856
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street
Suite 1400
Raleigh, NC 27601
919.890.4158
aislinnklos@parkerpoe.com

*Attorneys for Defendants*

16

# CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned hereby certifies that this brief contains no more than 6,250 words, as calculated by the word count feature of Microsoft Word.

*/s/ Aislinn R. Klos*
Aislinn R. Klos

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record.

This the 29th day of December, 2025.

/s/ *Aislinn R. Klos*
Aislinn R. Klos
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Tel: 919.828.0564
Fax: 919.834.4564
aislinnklos@parkerpoe.com

*Attorneys for Defendants*

18

Case 1:25-cv-00966-WO-JEP   Document 38   Filed 12/29/25   Page 18 of 18